# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| S.F. and S.F., individually and on behalf of S.F., their minor child,<br><br>   Petitioners,<br><br>v.<br><br>UNION COUNTY BOARD OF EDUCATION,<br><br>   Respondent, | COMPLAINT |

## PRELIMINARY STATEMENT

1. This action is brought by Stephen Farmer ("Mr. Farmer") and Sonda Farmer ("Mrs. Farmer") and their minor child S.F., seeking relief from a North Carolina Administrative Law Judge's decision that the Plaintiffs/Petitioners had not met their burden on any issue and were not entitled relief pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et. seq. and North Carolina law.

## PARTIES

2. S.F. is an eleventh grade student who has been diagnosed with Autism Spectrum Disorder, Generalized Anxiety Disorder, and Mood Disorder. S.F. is entitled to special education and related services under the Individuals with Disabilities Education Act ("IDEA"). S.F.'s disability-related behaviors resulted in him being removed from the school setting during the 2021-22 school year.

3. Plaintiffs Mr. and Mrs. Farmer are the parents of minor child Plaintiff S.F.

4. Plaintiffs are residents of Union County, North Carolina.

5. Plaintiffs were designated as Petitioners in a due process proceeding in the Office of Administrative Hearing ("OAH").

6. Defendant ("Defendant," "UCPS," "the School," or "the District"). is a public school district located in Union County, North Carolina. The administrative offices are located at 400 N. Church Street Monroe, NC 28112.

## JURISDICTION & VENUE

7. This claim arises under the IDEA, 20 U.S.C. §§ 1400 *et seq.*, 34 C.F.R. Part 300, N.C. Gen. Stat. §§ 115C-109.6 *et seq.*, and Article 3 of Chapter 150B of the North Carolina General Statutes. This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 and 20 U.S.C. §§ 1415(i)(3)(A).

8. This court may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. North Carolina's state special education law, N.C. Gen. Stat. § 115C-106 *et seq.*, must be consistent with the IDEA.

9. Venue in this district is proper under 28 U.S.C. § 1391(b) because Plaintiffs reside in this judicial district, and Defendant is a public school district whose administrative offices are in this judicial district.

## PROCEDURAL HISTORY AND RELEVANT CASE FACTS

10. S.F attended the District's schools from August 2015 when the family moved to North Carolina, through December 13, 2021. He has attended five different learning programs while enrolled in the district with varying levels of behavioral and disability-related support. From 2016-2019, S.F. had numerous behavioral incidents, including one manifestation determination which resulted in his placement in the homebound setting from September-November 2019.

11. S.F. has a long history of disability related behavioral problems in the school setting.

12. In March 2020, S.F. was forced to participate in virtual learning as the result of the COVID-19 pandemic. He did not have any disciplinary referrals for the remainder of the 2019-20 school year.

13. From August 2020-April 2021, because of COVID protocols, class sizes were reduced, there was an abbreviated school week, and S.F. did not have behavioral issues. This all changed in May 2021 when COVID protocols were lifted and all students were allowed back into classes.

14. S.F.'s social emotional service time for the 2021-22 school year was reduced from ninety (90) minutes to twenty-five (25) minutes daily and he was exited from speech-language services without reevaluation.

15. Although his May 25, 2021 IEP indicates that S.F. had a behavior intervention plan ("BIP") and behavior goals, neither was included in the IEP and no present levels of performance in the area of behavior nor related services were included in the IEP.

16. It does not appear an ESY discussion took place during the May 25, 2021 IEP meeting despite an increase in behaviors following the removal of aforementioned COVID-19 protocols.

17. S.F.'s most recent BIP is dated May 12, 2020 and was created during the COVID-19 pandemic while all students were being instructed remotely.

18. When S.F.'s behaviors increased from May 2021 through September 2021, the IEP team did not conduct a functional behavior analysis ("FBA") or revise his BIP.

19. S.F. was removed from his educational environment on or about September 10 and 13, 2021 due to behavioral incidents. An IEP meeting was not convened to discuss this increase in inappropriate behavior in the school setting, and an FBA was not conducted.

S.F. had behavioral incidents again on September 27 and 28, 2021. The September 28, 2021, incident resulted in a six-day removal from the educational environment with recommendation for long-term removal.

20. On October 1, 2021, the District held a manifestation determination review ("MDR") to discuss the recommended disciplinary change in placement. At the October 1, 2021 meeting, it was determined that the behavior was a manifestation of S.F.'s disability.

21. The IEP team did not conduct a new FBA before or following the MDR meeting.

22. The IEP team did not review IEP service time, including a possible need to add related services, did not offer to conduct reevaluations, did not offer to collect additional data on S.F.'s behaviors, did not add to or adjust present levels of performance, did not review the FBA or BIP, and did not adjust the BIP based on present data.

23. During the MDR meeting, the team failed to revise S.F.'s BIP, instead stating that his BIP had been revised in May 2020. S.F. was not able to return to his current placement/school the following school day.

24. S.F. suffered behaviorally, emotionally, and socially as the result of his unjustified removal from the school environment.

25. Mr. and Mrs. Farmer suffered financially as the result of S.F.'s unjustified removal from the school environment.

26. At an October 5, 2021 IEP Addendum meeting, the IEP team decided to address the safety concerns by reducing S.F.'s services and removing him from the school environment and placing him on homebound services without consideration of additional supports, services, informal or formal evaluations such as an FBA, or continuum of placement. None of S.F.'s general education teachers attended this meeting.

27. Mr. and Mrs. Farmer expressed safety concerns, and S.F.'s EC teacher echoed these concerns. Mr. and Mrs. Farmer requested alternative options such as another high school, program, or private school due to safety concerns however the IEP team did not consider the parents' requests.

28. Subsequent IEP meetings were held on October 18, November 8, and December 6, 2021, but S.F.'s placement was never changed and S.F. remotely attended Marvin Ridge High School with homebound placement until he was privately placed on December 13, 2021.

29. Even after Mr. and Mrs. Farmer unilaterally placed S.F. in a private setting, they continued to attend IEP meetings with the District in an effort to provide S.F. an appropriate IEP with proper placement.

30. In the The Prior Written Notice ("PWN") for the October 18, 2021 it is noted that the District didn't have an appropriate program available to provide S.F. with an in-person instructional option, that homebound services were delayed and that S.F. was not receiving full benefit of his IEP.

31. During a December 16, 2021 IEP meeting, the team considered a reentry plan which was found to be inappropriate in an NCDPI State Complaint that was filed by the family.

32. At the December 16, 2021 IEP meeting, the team agreed there was a need to complete a Speech-Language/Communication Evaluation including semantics and pragmatics, a FBA, and a Sensory Processing Evaluation. Although the PWN indicates the BIP is appropriate, it was not actually being followed because S.F. was at the time removed from his least restrictive environment ("LRE") and placed in the most restrictive homebound setting.

33. On October 25, 2021, the Exceptional Children ("EC") Division of the North Carolina Department of Public Instruction ("DPI") received a state complaint ("State Complaint") filed by Mr. Farmer on behalf of S.F. On December 17, 2021, the EC division of DPI issued a Complaint Investigation Final Report finding multiple procedural violations.

34. On March 28, 2022, Mr. and Mrs. Farmer filed a Petition for a Contested Case Hearing ("Petition") in North Carolina Office of Administrative Hearings ("NCOAH") against Union County Board of Education alleging violations of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"); N.C. Gen. Stat. §§ 115C-109.6 et seq.; Section 504 of the Rehabilitation Act of 1973 ("Section 504"); and Title II of the Americans with Disabilities Act ("ADA").

35. On April 18, 2022, Defendant/Respondent filed a Response to the Petition for Contested Case Hearing and moved to dismiss Petitioners' Section 504 and ADA claims.

36. On April 27, 2022, Administrative Law Judge David Sutton ("ALJ Sutton") issued an Order of Partial Dismissal dismissing all of Petitioners' allegations, claims, and causes of action related to Section 504 and the ADA and dismissed all claims for monetary damages.

37. On April 29, 2022, the Parties engaged in mediation but were unable to reach a resolution.

38. On June 9, 2022, the Plaintiffs/Petitioners filed a Motion for Summary Judgment seeking summary judgment in its favor on all issues raised in the Petition.

39. On June 10, 2022, the Defendant/Respondent filed a Motion for Partial Summary Judgment seeking dismissal of the Petitioners' private placement reimbursement claim.

40. On June 27, 2022, Plaintiffs/Petitioners issued subpoenas to witnesses, including proposed expert witness Leigh Mobley an employee of DPI who was involved in the investigation of the State Complaint, and who could speak to the numerous procedural violations in the matter.

41. On June 28, 2022, ALJ Sutton issued an Order Denying Petitioner's Motion for Summary Judgment and an Order Granting Defendant/Respondent's Motion for Partial Summary Judgment.

42. On June 29, Plaintiffs/Petitioners also subpoenaed Sherry Thomas, also an employee of DPI and who could speak to the procedural safeguards of the IDEA.

43. Plaintiffs/Petitioners intended to call both Sherry Thomas and Leigh Mobley as expert witnesses in the matter.

44. On June 29, 2022, Plaintiffs/Petitioners filed motions asking the Court to reconsider its ruling granting the Defendant/Respondent's Partial Motion for Summary Judgment and its ruling in the Amended Scheduling Order regarding the timeline for issuing a final decision in this matter.

45. On June 28, Chief ALJ Donald R van der Vaart ordered the parties to engage in a settlement conference conducted by ALJ Selena Malherbe on June 30, 2022. This conference did not result in a settlement.

46. Defendant/Respondent filed responses to these motions on July 5, 2022.

47. Also on July 5, 2022, Defendant/Respondent filed a Motions in Limine raising five (5) issues.

Case 3:23-cv-00139-FDW-DCK   Document 1   Filed 03/04/23   Page 7 of 17

48. On July 6, 2022, ALJ Sutton issued Orders denying Petitioner's Motion to Reconsider Scheduling Order and denying Petitioner's Motion to Reconsider Order Granting Motion for Partial Summary Judgment.

49. Also on July 6, 2022, a Motion to Quash Subpoena was filed on behalf of Sherry Thomas.

50. On July 7, 2022, a Motion to Quash Subpoena was filed on behalf of Leigh Mobley.

51. On July 8, 2022, parties filed responses to the Motions to Quash Subpoena and an Order was issued Denying Motion to Quash filed on behalf of Leigh Mobley and an Order of Conditional Grant of Motion to Quash filed on behalf of Sherry Thomas were issued.

52. Also on July 8, 2022, Plaintiffs/Petitionersfiled their Response to Defendant/Respondent's Motion in Limine and the Parties filed a Draft Proposed Order on Final Pre-Hearing Conference.

53. A hearing was held July 11-15, 2022.

54. On July 11, 2022, at the start of the hearing, Defendant/Respondent was given the opportunity to argue its five (5) Motions in Limine in open court. ALJ Sutton ruled on the motions (Hr'g Tr. Vol. 1 p. 13:25-23:13.)

55. On July 12, 2022, the ALJ Sutton issued the Order on Pre-Hearing Conference, nunc pro tunc July 8, 2022.

56. On July 14, 2022, at the close of the Petitioners' evidence, the Defendant/Respondent made a Motion for Involuntary Dismissal pursuant to Rule 41(b) of the NC Rules of Civil Procedure. Following oral argument by the Parties, the ALJ Sutton denied the motion.

57. On August 22, 2022, ALJ Sutton issued an Amended Order on Pre-Hearing Conference, nunc pro tunc July 8, 2022, which included a corrected listing of hearing issues as identified by the Petitioners.

58. On August 26, 2022, each Party filed admitted exhibits and verifications.

59. On August 29, 2022, ALJ Sutton issued an Order Granting a Joint Motion for Extension of Time, ordering that Proposed Final Decisions were due on or before September 23, 2022 and notifying the Parties that a Final Decision will be served on or before October 21, 2022.

60. On September 28, 2022, Defendant/Respondent filed and Objection to Petitioners' Proposed Final Decision.

61. On October 10, 2022, Plaintiffs/Petitioners responded to Defendant/Respondent's Objection to Petitioners' Proposed Final Decision and ALJ Sutton issued an Order Extending Time to File Final Decision to November 7, 2022. 20.

62. On October 17, 2022, Defendant/Respondent filed its Reply to Petitioner's Response. On November 1, 2022, Chief Administrative Law Judge Donald van der Vaart issued an Order Extending Filing of ALJ'S Decision until December 7, 2022. 21.

63. On November 29, 2022, the Undersigned issued an Order Overruling Objections to Proposed Final Decisions.

64. On December 5, 2022, a Final Decision was issued in the matter. (Attached hereto as Exhibit A) Mr. and Mrs. Farmer now appeal that Final Decision on the grounds of unsupported findings of fact, abuse of discretion, and judicial error.

## COUNT 1
**Unsupported Findings of Fact**

65. Plaintiffs reallege the statements contained in paragraphs 1-64

66. The ALJ's factual findings are not entitled to due weight. Also, the ALJ's findings were not regularly made and were reached through a process that is far from the accepted norm of factfinding. The ALJ made erroneous factual findings which were unsupported by the record and which also erroneously impacted rulings on conclusions of law.

67. The ALJ erred when he made Findings of Fact, which are unsupported by the evidence in the record or contradicted by substantial evidence in the record[1]:

    a. Whether meeting minutes provide all details of what happened at the IEP meeting (FFs ¶¶ 40, 56)
    b. Least Restrictive Environment ( FF ¶ 62)
    c. Appropriateness of placement at Melmark ( FF ¶ 116)
    d. FBA/BIP following placement change after manifestation determination ( FF ¶ 37)
    e. Whether the MDR was procedurally correct ( FF ¶ 35)
    f. Proposed reentry plans (FF
    g. Access to a general education that provides a FAPE ( FF ¶ 46)
    h. Placement change after manifestation determination ( FFs ¶¶ 42, 53, 56, 62, 80)
    i. Reason for rejecting the December 16, 2021 IEP ( FF ¶ 88)
    j. Reason for rejecting the March 31, 2022 IEP ( FF ¶ 105)
    k. Whether Melmark was an appropriate placement for S.F. ( FF ¶ 116)

68. Throughout the findings of fact, critical evidence is omitted from the Final Decision which leads to incorrect conclusions of law. For example, the Final Decision fails to indicate Stephanie Welland drafted a reentry plan without ever formally meeting or working with S.F. (*see* FF ¶ 71)

69. Critical facts in favor of the Plaintiffs/Petitionersare omitted from the findings of fact in the Final Decision.

70. Furthermore, other factual findings omit critical details that skew them to favor Defendant/Respondent. (*See, e.g.* FFs ¶¶ 9, 35, 39, 44)

---

[1] Findings of Fact from the Final Decision are cited herein as "FF ¶ ___" and Conclusions of Law in the ALJ's Final Decision are cited herein as "CL ¶ ___."

71. Moreover, multiple findings of fact are outside the scope of the relevant period of March 29, 2020 through March 28, 2021. (FFs ¶¶ 93-111)

72. Although the legal standards raised in the Conclusions of Law are not in themselves incorrect, the conclusions of law go against the weight of evidence in the record.

## COUNT 2
### Abuse of Discretion

73. Plaintiffs reallege the statements contained in paragraphs 1-72

74. The ALJ abused his discretion when he excluded evidence of the State Complaints filed by Petitioners/Plaintiffs and the findings thereof from the hearing when the Petition alleged violations of the IDEA and related state law and when the evidence was more probative than prejudicial.

75. The ALJ applied the incorrect standard of law when ruling to exclude evidence in *limine*.

76. The ALJ did not consider the weight of the evidence in ruling to exclude said evidence when he granted Defendant/Respondent's Motion in Limine.

77. OAH follows North Carolina Rules of Evidence. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. N.C. Gen Stat § 8C-1, N.C. R. Evid. 403.

78. Facts that show violations of North Carolina Procedural Safeguards did in fact exist and are very relevant to whether S.F. was afforded a FAPE and whether the District met its obligations under the IDEA and related state law. Moreover, these facts were pled in the Petition and appear in the omitted evidence.

79. The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits state actors from depriving any person of life, liberty, or property without due process of law.

80. A FAPE is a liberty interest in which S.F. has a right to due process of law.

81. Exclusion of evidence critical to determining whether substantive violations under the IDEA existed in the case deprived S.F. of due process of law.

82. The exclusion of evidence related to the State Complaints precluded the Plaintiffs/Petitioners' proposed expert witnesses from testifying at the OAH Due Process Hearing.

83. Based on the July 23, 2013 OSEP Memorandum titled *Dispute Resolution Procedures under Part B of the IDEA*, "an issue in a State complaint can also be the subject of a due process complaint requesting a due process hearing, as long as the issue relates to a matter regarding the identification, evaluation, or educational placement of a child with a disability, or the provision of FAPE to the child, as described in 34 CFR §300.507(a)(1)."

84. There is no reason to rule to exclude relevant evidence until it has been presented at trial.

85. The exclusion of relevant evidence precluded Plaintiffs/Petitioners from presenting their case at the administrative level and precluded them from the right to a fair hearing.

**COUNT 3**
**Judicial Error**

86. Plaintiffs reallege the statements contained in paragraphs 1-85

87. The ALJ erred when finding Plaintiffs/Petitioners did not meet their burden of proof.

88. The ALJ erred when he did not make witness credibility findings in the Final Decision.

89. The ALJ failed to make a finding of fact or conclusion of law as to what S.F.'s LRE is.

90. The ALJ erred when failing to make a finding of fact or conclusion of law that it was appropriate to place S.F. in a separate classroom without access to non-disabled students.

91. The ALJ erred when making a finding of fact that S.F. could work his way out of a separate setting ( FF ¶ 83) to a less restrictive placement without defining S.F.'s LRE.

92. The ALJ erred when making a conclusion of law that parental disagreement with the District's decisions at IEP meetings equated a lack of cooperation by Plaintiffs/Petitioners.

93. The ALJ erred when finding that there was no evidence presented demonstrating S.F.'s need for compensatory services beyond those already provided by UCPS. The Finding of Fact incorrectly states the legal standard related to compensatory services. ( FF ¶ 119.)

94. The ALJ erred when he did not make a finding of fact that S.F. should have returned to in-person school following the manifestation determination and when he failed to make a finding of fact or conclusion of law that S.F. did not have to serve the remainder of his suspension. (CL ¶ 30) Moreover, the ALJ erred in finding S.F. had to serve the full six day suspension (*See* FF ¶ 35).

95. The ALJ erred when making conclusions of law contrary to findings of fact regarding the District's duty to conduct an FBA and revise S.F.'s BIP following a manifestation determination merely because S.F. was not attending on-campus classes. (*See* FF ¶ 44.)

96. The ALJ erred when failing to make a finding of fact or conclusion of law that S.F. was entitled to return to in-person classes at the District's Marvin Ridge High School on October 4, 2021.

97. The ALJ erred when making a finding of fact that the December 16, 2022 IEP proposal constituted a FAPE but failed to make a finding of fact or conclusion of law that previous IEPs did not provide S.F. an offer of FAPE.

98. The ALJ erred when failing to make findings of fact related to each of the areas or alleged denial of FAPE.

99. The ALJ erred because conclusions of law go against the weight of evidence in the record.

100. The ALJ erred when making a finding of fact that Plaintiffs/Petitioners failed to show a denial of FAPE due to the lack of expert testimony. ( FF ¶ 123-24) The IDEA does not require expert testimony to show a denial of FAPE.

101. The ALJ erred when he failed to make findings of fact that all of S.F.'s IEPs during the relevant period were reasonably calculated to enable him to make progress in light of his circumstances.

102. The ALJ erred when he did not conclude the numerous procedural violations detailed in the Findings of Fact deprived S.F. a FAPE.

103. The ALJ erred when it failed to make a finding of fact or conclusion of law that it was improper to exit S.F. from speech-language services without first conducting an evaluation in that area.

104. The ALJ erred when finding the District modified S.F. BIP as necessary to address his behavior following a manifestation determination. (CL ¶ 19)

105. The ALJ erred when finding S.F. was not entitled to compensatory education services.

106. The ALJ erred when making a finding on compensatory private counseling services merely because S.F. did not receive private counseling during the relevant period. There is no legal requirement that one must receive a private service to obtain it as a compensatory award.

107. The ALJ improperly dismissed claims brought under Section 504 of the Rehabilitation act and Title II of the ADA.

108. North Carolina General Statute 115(c)-109.6(a) states: "Any party may file with the Office of Administrative Hearings a petition to request an impartial hearing with respect to any matter relating to the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education of a child, or a manifestation determination."

109. All of Petitioner's claims for relief, including its Section 504 and Title II of the ADA claims, were brought under the same gravaman issue which related to the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education of a child, or a manifestation determination.

110. Moreover, all issues presented in the Plaintiffs/Petitioners' Due Process Petition relate to the identification, evaluation, or educational placement of a child with a disability and the provision of FAPE to the child, as described in 34 CFR §300.507(a)(1)

111. The Section 504 regulation requires public elementary and secondary education providers to afford children who need or are believed to need special education or related services due to a disability a "a system of procedural safeguards that includes [...] an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure." 34 C.F.R. § 104.36. Plaintiffs/Petitioners were not afforded that review.

## **RELIEF REQUESTED**

Plaintiffs respectfully request the Court:

1. Vacate the ALJ's decision and instead enter a decision in favor of the Plaintiff.
2. Find the May 25, 2021 reduction in and removal of IEP services constituted a substantive error under the IDEA and resulted in a denial of FAPE.

3. Find the failure to revise S.F.'s BIP prior to changing his placement constituted a substantive error under the IDEA and resulted in a denial of FAPE.

4. Find the District's failure to conduct an updated FBA and revise S.F.'s BIP following a manifestation determination constituted a substantive error under the IDEA and resulted in a denial of FAPE.

5. Find the placement change to homebound instruction constituted a substantive error under the IDEA and resulted in a denial of FAPE.

6. Find the District failed to make an offer of FAPE following the Manifestation Determination and within the relevant period of the March 28, 2022 Petition, which constituted a substantive error under the IDEA and resulted in a denial of FAPE.

7. Find the reduction in services following the change to homebound instruction constituted a substantive error under the IDEA and resulted in a denial of FAPE.

8. Find the District denied S.F. a FAPE during the 2020-21 and 2021-22 school years.

9. Find the district owes compensatory services in the amount of 463 hours for the time that S.F. was inappropriately kept on homebound.

10. Rule evidence was improperly excluded in *limine* and allow excluded evidence and related witness testimony to be considered by this Court or in the alternate give instruction to allow the evidence and witness testimony on a remand.

11. Declare Plaintiffs the prevailing party on all issues.

12. Grant Plaintiffs damages in an amount according to proof at trial.

13. Award Plaintiffs costs and fees.

14. Award any and all other relief which the Court deems just and proper.

Respectfully submitted this the 4th day of March, 2023.

BY:
/s/ Carla Fassbender
Carla Fassbender, Esq.
NC State Bar No. 55210
Fassbender Law, PLLC
1251 Ostwalt Amity Rd
Cleveland, NC 27013
Phone (704) 978-8797
Email: fassbenderlaw@gmail.com
*Counsel for Petitioners*

/s/ Kelli Espaillat
Kelli Espaillat
NC Bar Number 44369
Kincaid and Associates, PLLC
301 E. John St #3543
Matthews, NC 28106
Phone 302-561-5635
Fax: 910-401-1128
Email: kespaillat@kincaidandassociates.com
*Attorney for Petitioners*