UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00139-FDW-DCK

| | |
|---|---|
| S.F. AND S.F. INDIVIDUALLY AND ON BEHALF OF S.F., THEIR MINOR CHILD, <br><br>Plaintiffs,<br><br>v.<br><br>UNION COUNTY BOARD OF EDUCATION,<br><br>Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss, (Doc. No. 18), and Plaintiffs' Motion to File Evidence Not in the Administrative Record, (Doc. No. 33). These motions have been fully briefed, (Doc. Nos. 19, 25, 28, 34, 35, 38), and are ripe for ruling. For the reasons set forth below, Defendant's Motion is GRANTED IN PART and DENIED IN PART, and Plaintiffs' Motion is GRANTED.

**I. BACKGROUND**

Plaintiff S.F. is a minor child who resides with his parents, who are also named Plaintiffs. According to the Amended Complaint, S.F. is a student with disabilities who attended public schools operated by Defendant Union County Board of Education from August 2015 to December 2021. (Doc. No. 10.) S.F. had a history of disability-related behavioral problems in the school setting. Due to a behavioral incident on September 28, 2021, Defendant removed S.F. from the educational environment for six days and recommended long-term-removal. The next day, Defendant held a manifestation determination review, discussed the recommended disciplinary change in placement, and determined S.F.'s behavior was a manifestation of his disability.

1

As part of his education, S.F. had an Individualized Education Plan ("IEP") and a Behavior Intervention Plan ("BIP").[1] On October 5, 2021, Defendant held an IEP meeting and placed S.F. on homebound services, where he remotely attended Marvin Ridge High School. Defendant conducted subsequent IEP meetings. On December 13, 2021, Plaintiffs unilaterally placed S.F. in a private setting; however, his parents continued to attend IEP meetings with Defendant and the parties continued to discuss S.F.'s IEP and school placement through at least December 16, 2021.

On March 28, 2022, Plaintiffs challenged the educational programming recommendations made by Defendant by filing a Petition for a Contested Case Hearing in the North Carolina Office of Administrative Hearings ("NCOAH") and alleging violations of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"); N.C. Gen. Stat. §§ 115C-109.6 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"); and Title II of the Americans with Disabilities Act ("ADA"). In short, Plaintiffs asserted Defendant failed to provide S.F. with his statutory right to receive a free and appropriate education ("FAPE"), and as a remedy, they sought reimbursement for their unilateral placement of S.F. at a private school. On April 27, 2022, the Administrative Law Judge issued an Order of Partial Dismissal dismissing Plaintiff's allegations, claims, and causes of action related to Section 504 and the ADA, as well as all claims for monetary damages. The ALJ conducted an evidentiary hearing over the course of several days

---

[1] For purposes of background, the Court finds it helpful to include an overview from the Fourth Circuit to explain some of the Individuals with Disabilities Education Act ("IDEA") terms relevant to the issues in this case:
> The IDEA provides funds for states to educate children with disabilities, subject to conditions imposing substantive requirements on the education that is provided. In return for the receipt of federal education funding, states are required by the IDEA to provide each of their disabled children with a FAPE. A FAPE comprises special education and related services—both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction. The mechanism by which a state provides a FAPE is an IEP--a document that describes the child's unique needs and the state's plan for meeting those needs.

Charlotte-Mecklenburg Cnty. Bd. of Educ. v. Brady, 66 F.4th 205, 208 (4th Cir. 2023)

and also received briefing from the parties. On December 5, 2022, the ALJ issued a Final Decision concluding Plaintiffs were not entitled to any relief.

Plaintiffs subsequently filed this action appealing the ALJ's final decision and also asserting claims under IDEA, Section 504, the ADA, 42 U.S.C. § 1983, negligence, and negligent infliction of emotional distress. Defendant seeks dismissal of Plaintiffs' claims brought under Section 504, the ADA, and Section 1983, as well as the state law tort claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant also seeks dismissal of Plaintiffs' request for compensatory damages as not permitted under IDEA.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001). On a Rule 12(b)(6) motion, the Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (quoting Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013)). Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice." Tellabs. Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

### III. ANALYSIS

In order to survive the instant motion to dismiss, the Amended Complaint must plausibly plead the requisite elements to establish claims under Section 504, the ADA, Section 1983, negligence, and negligent infliction of emotional distress. Notably, Defendant has not moved to dismiss Plaintiffs' IDEA claim, but seeks dismissal of that part of the Amended Complaint seeking compensatory damages under IDEA. The Court addresses these in turn.

A.   Section 504 and ADA

Section 504 and Title II of the ADA both prohibit disability-based discrimination against qualified individuals. See 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."); 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). Because the language and purpose of both Acts is substantially similar, the same analysis applies to both the Section 504 and ADA claims:

> Title II of the ADA and Section 504 are closely related, and both "prohibit disability-based discrimination against qualified individuals." O.V. v. Durham Pub. Sch. Bd. of Educ., No. 1:17CV691, 2018 WL 2725467, at *23 (M.D.N.C. June 6, 2018), report and recommendation adopted, 2018 WL 3370644 (M.D.N.C. July 10, 2018). Since "the language and purpose of both Acts [are] substantially the same, the same analysis applies to claims brought under both statutes." Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264 n.9 (4th Cir. 1995). To bring a claim under either statute, the plaintiff must establish: (1) that plaintiff has a disability; (2) that plaintiff is otherwise qualified for the benefit or program in question; and (3) that plaintiff was excluded from the benefit or program due to discrimination

4

solely on the basis of disability. Q.C. v. Winston-Salem/Forsyth Cnty. Schs. Bd. of Educ., No 1:19-cv-1152, 2021 WL 1430697, at *6 (M.D.N.C. Apr. 15, 2021) (citing Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 (4th Cir. 2016)). The two statutes differ in their application of the third element. Under a Section 504 claim, the plaintiff must establish that he was excluded solely on the basis of the disability, while the ADA allows a claim where the disability was a "motivating cause" of the exclusion. Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 462 (4th Cir. 2012) (quoting Baird ex rel. Baird v. Rose, 192 F.3d 462, 468–69 (4th Cir. 1999)). To establish discrimination under Section 504 in education cases, "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." Sellers by Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 528–29 (4th Cir. 1998) (quoting Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982)). The Fourth Circuit recognizes that "either bad faith or gross misjudgment should be shown before a [Section] 504 violation can be made out, at least in the context of education of [disabled] children." Id. at 529 (quoting Monahan, 687 F.2d at 1171).

C.G.A. by & Through R.A. v. Iredell-Statesville Sch. Dist. Bd. of Educ., 2023 WL 8461675, at *5 (W.D.N.C. Nov. 3, 2023), report and recommendation adopted sub nom. R.A. v. Iredell-Statesville Sch. Dist. Bd. of Educ., 2023 WL 8461186 (W.D.N.C. Dec. 6, 2023); see also Baird ex rel. Baird v. Rose, 192 F.3d 462, 469 (4th Cir. 1999); Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty., 673 F.3d 333, 336 n.1 (4th Cir. 2012); Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 (4th Cir. 2016).

Mere negligence does not suffice, and a plaintiff must plead "something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist." Sellers by Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 529 (4th Cir. 1998) (quotation omitted). Furthermore, "Conclusory allegations of gross misjudgment or bad faith without further factual development fall short of stating a claim under Title II or Section 504." Q. C. v. Winston-Salem/Forsyth Cnty. Sch. Bd. of Educ., No. 1:19CV1152, 2021 WL 1430697, at *6 (M.D.N.C. Apr. 15, 2021) (citing Charlotte–Mecklenburg Bd. of Educ. v. B.H. ex rel. C.H. & W.H., No. 3:07CV189, 2008 WL 4394191, at *7 (W.D.N.C. Sept. 24, 2008) (explaining that "simply labeling the conduct at issue as having been performed in bad faith is insufficient to allege[] that the actions

5

in question rise to that level")). The 'bad faith or gross misjudgment standard' is extremely difficult to meet, especially given the great deference to which local school officials' educational judgments are entitled." Doe v. Arlington Cnty. Sch. Bd., 41 F. Supp. 2d 599, 609 (E.D. Va. 1999), aff'd sub nom. Doe ex rel. Doe v. Arlington Cnty. Sch. Bd., 210 F.3d 361 (4th Cir. 2000). "Ultimately, plaintiffs must allege that the school's actions depart[ed] substantially from accepted professional judgment, practice or standards as to demonstrate that the persons responsible did not base the decision on such a judgment." D.N. v. Louisa Cty. Pub. Sch., 156 F. Supp. 3d 767, 776 (W.D. Va. 2016) (quotation marks omitted).

Defendant seeks dismissal based on Plaintiff's failure to allege any facts indicating Defendant acted in bad faith or with gross misjudgment. Plaintiffs provide a brief response to this argument and generally refer the Court—without discussion—to several paragraphs in the First Amended Complaint. (See Doc. No. 25, p. 7 (citing Doc. No. 10, ¶¶ 45-47, 50, 59, 61, 106-08, 110-13, 118-20, 122)). These allegations, considered collectively and accepted as true, fail to rise to the level of bad faith or gross misjudgment. Instead, these allegations referenced by Plaintiffs simply state procedural steps taken with the NCOAH or concern Defendant's failure to provide Plaintiffs with FAPE, which is insufficient as a matter of law to set out a Section 504 or ADA claim. Sellers v. School Board of City of Manassas, 141 F.3d 524, 529 (4th Cir.1998) ("To prove discrimination in the education context, something more than a mere failure to provide the 'free appropriate education' required by IDEA must be shown. We agree with those courts that hold that either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children." (cleaned up)).

Despite Plaintiffs' dissatisfaction with the actions taken concerning S.F., the complaint does not plausibly allege that Defendant substantially departed from accepted professional

judgment or standards. Because Plaintiffs' allegations reveal neither bad faith nor gross misjudgment, Plaintiffs fail to meet the "high bar" demanded of them. Accordingly, the Court dismisses Plaintiffs' Section 504 and ADA claims.

B.      Section 1983

Plaintiffs' claims pursuant to 42 U.S.C. § 1983—specifically asserting due process and equal protection violations--also require distinct elements apart from an IDEA claim. "Because IDEA provides a comprehensive remedial scheme for violations of its own requirements . . . parties may not sue under section 1983 for an IDEA violation." Sellers, 141 F.3d at 529. However, "[S]ection 1415(f) does permit plaintiffs to resort to section 1983 for *constitutional* violations, notwithstanding the similarity of such claims to those stated directly under IDEA." Sellers, 141 F.3d at 530 (emphasis in original). "Under IDEA, the simple failure to provide a child with a free appropriate public education constitutes a violation of the statute. 20 U.S.C. § 1412(1). By contrast, plaintiffs must meet a higher standard of liability to prevail on a constitutional claim." Sellers, 141 F.3d at 530. To state a constitutional violation under section 1983, Plaintiffs must plausibly allege the school Defendants deprived them of a right secured by the Constitution and laws of the United States and that this deprivation of a right was made under color of a state statute, ordinance, regulation, custom, or usage. See West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001). As noted above, Plaintiffs allege Defendant violated S.F's Fourteenth Amendment's right to due process and the Equal Protection Clause.

1.      Due Process

Plaintiffs' Amended Complaint explicitly identifies a "substantive due process" claim, although Plaintiffs' briefing appears to argue they also assert a procedural due process violation.

7

(Compare Doc. No. 10 with Doc. No. 25.)   Procedural and substantive due process claims require different showings. Under procedural due process, "protection of property is a safeguard of the security interests that a person has already acquired in specific benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576, (1972). "It is a guarantee of fair procedures, typically notice and an opportunity to be heard." Mora v. City Of Gaithersburg, 519 F.3d 216, 230 (4th Cir. 2008) (quotations omitted). To state a procedural due process claim, Plaintiffs must allege: "'(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate.'" Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011) (quoting Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 145 (4th Cir. 2009)).

In contrast, substantive due process "is a far narrower concept than procedural; it is an absolute check on certain government actions notwithstanding the fairness of the procedures used to implement them." Roth, 408 U.S. at 576, 92 S.Ct. 2701 (citing Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995)).   The Fourth Circuit has explained:

> Substantive due process protects individuals from "arbitrary" government action that constitutes "egregious official conduct." Cty. of Sacramento v. Lewis, 523 U.S. 833, 845–46(1998). Only executive conduct that "shocks the conscience" can support a cognizable substantive due process claim. Id. at 846. Generally, the challenged executive action "must have been 'intended to injure in some way unjustifiable by any government interest.'" Waybright v. Frederick Cty., 528 F.3d 199, 205 (4th Cir. 2008) (quoting Cty. of Sacramento, 523 U.S. at 849, 118 S.Ct. 1708).

Z.G. by & through C.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ., 744 F. App'x 769, 782 (4th Cir. 2018), abrogated in part by Luna Perez, 143 S. Ct. at 863-65; see also Rucker v. Harford Cnty., Md., 946 F.2d 278, 281 (4th Cir. 1991) ("[T]he residual protections of 'substantive due process' . . . run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural

8

protections or of adequate rectification by any post-deprivation state remedies." (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).

"Under either form of protection, however, a person must have a protected interest in either life, liberty, or property." Chavez-Rodriguez v. City of Santa Fe, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008). North Carolina provides a free public education "to every person of the State less than 21 years old, who has not completed a standard high school course of study." N.C. Gen. Stat. § 115C–1. The Supreme Court has ruled, "the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause.," Goss v. Lopez, 419 U.S. 565, 574 (1975). Courts have recognized the limitations of this property interest: "With respect to public education, citizens possess a property interest not in the particulars of the educational experience, but rather in participation in the educational process as a whole." O.V. v. Durham Pub. Sch. Bd. of Educ., No. 1:17CV691, 2018 WL 2725467, at *27 (M.D.N.C. June 6, 2018) (collecting cases), report and recommendation adopted, No. 1:17-CV-691, 2018 WL 3370644 (M.D.N.C. July 10, 2018).

Defendant argues Plaintiffs' due process claims mirrors the IDEA claim, which is insufficient to state a Section 1983 claim under applicable law. The Court agrees, in part, particularly where Plaintiffs—again—cite generally and without discussion to several paragraphs in the First Amended Complaint to support this claim. (See Doc. No. 25, p. 7 (citing Doc. No. 10, ¶¶ 92, 100, 103-04, 110, 118(b), 134(g), 247, 257.) These allegations relate to Defendant's failure to implement S.F.'s IEPs, predetermination of his placement, failure to comply with IDEA, and failure to provide a FAPE, as well as Plaintiffs' Section 504, ADA, and negligence claims. These allegations, rife with reference to IDEA and Defendant's alleged failure to provide a FAPE, are

insufficient as a matter of law to state a Section 1983 claim for either procedural or substantive due process violations.

In an effort to distinguish their due process claims from their IDEA claim, Plaintiffs contend Defendant violated S.F.'s due process rights when it deprived him of an education *in whole*, not merely special education services, by removing him from the school setting and placing him on homebound instruction with "minimal access to education services and instruction" from around October 1, 2022, to December 16, 2022. (Doc. No. 25, p. 10.) This argument, however, explicitly acknowledges Defendant *provided* S.F. with access to education albeit in an alternate education setting and therefore fails to sufficiently allege the property right recognized under applicable law for due process violations. Although Plaintiffs' challenges to the specifics of S.F.'s alternative education experience can form the basis of their IDEA claim, those facts as to the particulars of that educational experience cannot simultaneously support their due process claims as a matter of law. Because Plaintiffs acknowledge Defendant provided some form of public education to S.F., nothing in the Amended Complaint indicates Defendant *deprived* S.F. from participating in the educational process *as a whole*. See O.V. v. Durham Pub. Sch. Bd. of Educ., 2018 WL 2725467 at *27 (rejecting similar argument because it "merely reprises Plaintiffs' IDEA claims, which cannot form the basis of Section 1983 claims"). In sum, the Amended Complaint fails to articulate the high standard of pleading necessary to state a substantive or procedural due process claim. Accordingly, the Court dismisses the Section 1983 claims for due process violations.

2. Equal Protection

Turning to Defendant's motion to dismiss Plaintiffs' Section 1983 claim under the Equal Protection Clause, the Fourth Circuit has explained, "To succeed on an equal protection claim, [a

plaintiff] must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotations and citations omitted). In so doing, Plaintiffs must "plausibly allege facts sufficient to identify actual, similarly situated students to [S.F.] who were treated differently." Vlasaty v. Wake Cnty. Pub. Sch. Sys. Bd. of Educ., No. 5:17-CV-578-D, 2018 WL 4515877, at *8 (E.D.N.C. Sept. 20, 2018) (collecting cases and dismissing Section 1983 claim). If a plaintiff makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney, 293 F.3d at 731; see also Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In an educational context, this means a plaintiff must plausibly allege that "a school board intended to treat children differently because of their disabilities," and that such a decision "was without any rational basis." Sellers, 141 F.3d at 530–31. "To survive a motion to dismiss for failure to state a claim [under the rational basis test], a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." Giarratano v. Johnson, 521 F.3d 298, 303-04 (4th Cir. 2008) (quoting Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992)). In the context of a Rule 12(b)(6) motion, the Fourth Circuit has explained the high bar a plaintiff must meet to allege that a government actors' conduct lacks justification:

> [T]his test represents a powerful presumption of validity. The showing required to overturn that presumption is steep. A challenger must show there is no rational relationship between the disparity of treatment and some legitimate governmental purpose. The state need not make any showing; no evidence of any kind is required; reasonable speculation is enough. As for the justification, any conceivable reason will do. It does not matter what motivated the classification. . . . . All that is needed is an imperfect fit between a plausible reason and some legitimate end. In total, this test requires an extraordinary showing by a plaintiff like Doe: He must negate every conceivable basis which might support the [governmental action].

11

Doe v. Settle, 24 F.4th 932, 943 (4th Cir.) (cleaned up), cert. denied, 142 S. Ct. 2874, 213 L. Ed. 2d 1093 (2022). "The deference afforded to the government under the rational basis test is so deferential that even if the government's actual purpose in creating classifications is not rational, a court can uphold the [governmental action] if the court can envision some rational basis for the classification." Guerra v. Scruggs, 942 F.2d 270, 279 (4th Cir. 1991) (emphasis omitted); see also United States v. Carpio–Leon, 701 F.3d 974, 982 (4th Cir. 2012) (describing "rational-basis level of scrutiny" as "a low hurdle").

Plaintiffs' Amended Complaint here fails to plausibly allege disparate treatment between S.F. and any similarly situated students. In response to the instant motion to dismiss, Plaintiffs concede they "have no examples of Defendant excluding disabled students from school for actions found to be manifestations of their disabilities as Defendant did with S.F." (Doc. No. 25, pp. 12-13.) Plaintiffs' equal protection claim therefore fails. See C.A. by C.A. v. Bd. of Directors of Corvian Cmty. Sch., No. 3:22-CV-00035, 2023 WL 5747149, at *10 (W.D.N.C. Sept. 6, 2023) (dismissing Section 1983 Equal Protection Claim where the complaint was "devoid of allegations identifying students who are similarly situated to Plaintiff or allegations of any disparate treatment"); see also Bouabid v. Charlotte Mecklenburg Sch. Bd. of Educ., No. 3:19-CV-30, 2020 WL 1082491, at *5 (W.D.N.C. Mar. 6, 2020) (same); Vlasaty, 2018 WL 4515877 at *8 (same).

As alternative grounds for dismissal, Plaintiffs' Equal Protection claim also fails because it relies on IDEA and Defendant's failure to provide S.F. with a FAPE. In opposing the instant motion, Plaintiffs argue they have sufficiently plead a claim because "the custom was keeping S.F. out of school when there is no such law that supports doing so. The law in North Carolina is for school districts to provide children with a free public education, and under the IDEA to provide children with a FAPE." (Doc. No. 25, p. 11.) Plaintiffs' argument explicitly conflates their Equal

Protection claim with their IDEA claim, and in doing so, makes clear their failure to state a claim for relief under applicable law governing Section 1983. See Sellers, 141 F.3d at 529; Vlasaty, 2018 WL 4515877 at *7 ("To the extent that plaintiffs allege IDEA violations, they cannot state a claim under section 1983.").

Finally, as a third basis for dismissal of the Equal Protection claim, Plaintiffs fail to address or otherwise argue the lack of a rational basis for their Section 1983 claim. Other than one conclusory sentence alleging "no rational basis for treating S.F. in a disparate manner," (Doc. No. 10, ¶ 220), Plaintiffs' Amended Complaint is devoid of *any* factual allegation in Plaintiffs' Amended Complaint sufficient to overcome the presumption of rationality. Notably, Plaintiffs' fail to make *any* argument regarding Defendant's a rational basis—or lack thereof—in their brief opposing the motion at bar. Dismissal of Plaintiffs' Equal Protection claim under Section 1983 is therefore appropriate.

    C.    Municipal Liability

Finally, even if Plaintiffs pled a claim under Section 1983, Plaintiffs have failed to allege a sufficient basis for imposing municipal liability on the Board. See, e.g., Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (2010); City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

A school board's failure to train can result in liability under § 1983 only when such failure reflects deliberate indifference to a plaintiff's constitutional rights. Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice . . . can a [governmental actor] be liable for such failure under § 1983." (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)); see also Jordan by Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994); Mathis v. Caswell Cnty. Sch. Bd. of Educ., No. 1:20CV92, 2021 WL 1109466, at *12

13

(M.D.N.C. Mar. 23, 2021). "Mere negligence is insufficient to impose section 1983 liability on a municipality for alleged failure to train." Jordan, 15 F.3d at 341. "Moreover, neither a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone." Id.; see also Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983) ("Generally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse."); Doe, 225 F.3d at 456 (recognizing lack of anything in the record to suggest the defendant's conduct was the result of a "persistent and widespread" practice such that the governmental actor could be held liable (quoting Monell, 436 U.S. at 691)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (cleaned up).

"Local governments cannot be liable under section 1983 based upon a theory of respondeat superior. Rather, liability attaches only if conduct directly causing the alleged deprivation is undertaken to effectuate an official policy or custom." Vlasaty, 2018 WL 4515877 at *8 (collecting cases; dismissing Section 1983 claim against school board based on the plaintiffs' failure to allege a policy or custom that accounted for the student's injury). The Fourth Circuit has explained:

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (cleaned up). These principles also apply to school boards. See Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 522 n. 3 (4th Cir. 2000) (applying Monell to Section 1983 claim brought against school board and noting that "[i]n Monell,

14

the Court recognized that school boards and municipalities are indistinguishable for purposes of § 1983").

Plaintiffs' Amended Complaint contains generalizations and legal conclusions regarding Defendant's "custom, policy, and practice," and the Amended Complaint as a whole fails to sufficiently allege deliberate indifference. (See Doc. No. 10, pp. 26-32.) At best, Plaintiffs make one broad and sweeping allegation that Defendant "established a custom, policy, and practice of failing to enforce federal and state law requirements as well as Board Policy by keeping S.F. from attending in-person learning during the 2021-22 school year and denying him equal access to an education." (Doc. No. 10, p. 29.) Nothing in the Amended Complaint identifies with any particularity the policy or custom to support this generalization, and Plaintiffs' argument again demonstrates Plaintiffs' improper attempt to rely on their IDEA claim as a basis for relief under Section 1983. Furthermore, while Plaintiffs contend "Defendant Board failed to supervise and train its subordinates[,]" Plaintiffs fail to assert *any* allegation regarding a history, pattern, or persistent and widespread practice to sufficiently support a failure to train and supervise claim under Section 1983. See Wellington, 717 F.2d at 936 ("A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability."). For these reasons, dismissal is proper.

C.  Negligence and Negligent Infliction of Emotional Distress

Defendants argue Plaintiffs' negligence claims fail as a matter of law because they are premised on allegations of intentional—rather than negligent—conduct. To establish a claim of negligence, Plaintiffs must sufficiently allege: (1) Defendant owed Plaintiffs a duty of care; (2) Defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of Plaintiffs' injury; and (4) damages resulted from the injury. Camalier v. Jeffries, 460 S.E.2d 133,

15

136 (N.C. 1995); see also Matthieu v. Piedmont Nat. Gas Co., 152 S.E.2d 336, 341 (N.C. 1967); Kiser v. Snyder, 205 S.E.2d 619, 621 (N.C. Ct. App. 1974) ("A teacher must abide by that standard of care which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances."). In order to state a claim for negligent infliction of emotional distress, Plaintiffs must allege: (1) Defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause Plaintiffs severe emotional distress, and (3) the conduct did in fact cause Plaintiffs severe emotional distress. Ennett v. Cumberland Cty. Bd. of Educ., 698 F.Supp.2d 557, 560 (E.D.N.C. 2010) (internal quotations omitted); see also Andersen v. Baccus, 439 S.E.2d 136, 139 (N.C. 1994); Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990).

Here, the parties' arguments on this issue are sparse, and the few authorities cited by both parties do not provide helpful guidance at this stage in the proceedings. The Court notes Plaintiffs continue to rely on allegations that primarily concern their IDEA claims to support their negligence claims; and Defendant fails to direct the Court to sufficient authority supporting its position on dismissal. While the Court has found only a handful of cases to govern the Court's analysis of negligence claims asserted by a student against a school board related to the provision of education in this context, the Court concludes that dismissal of these claims at this time and under this record is not appropriate. This portion of Defendant's motion is therefore denied. Consequently, the Court also denies that portion of Defendant's motion seeking dismissal of Plaintiffs' claims for compensatory damages. Denial here is without prejudice to the parties' ability to reassert any applicable arguments—supplemented with sufficient authority—to support their positions at summary judgment.

D.     Motion to File Evidence Not in the Administrative Record

Plaintiffs seek to supplement the administrative record before this Court pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii) and ask the Court to consider evidence in the instant case that the ALJ excluded at the NCOAH. "District courts conduct a modified de novo review, giving due weight to the underlying administrative proceedings, but are empowered to receive and consider evidence outside the administrative record." Charlotte-Mecklenburg Cnty. Bd. of Educ. v. Brady, 66 F.4th 205, 211 (4th Cir. 2023) (cleaned up); see also 20 U.S.C. § 1415(i)(2)(C)(ii). The Fourth Circuit has explained:

> The IDEA provides that the district court "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). The determination of whether to allow additional evidence "must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo." Town of Burlington v. Dep't of Educ., 736 F.2d 773, 791 (1st Cir. 1984). Rejecting a "lenient" standard, we have held that "additional" evidence will not include "testimony from all who did, or could have, testified before the administrative hearing." Springer v. Fairfax Cnty. Sch. Bd., 134 F.3d 659, 667 (4th Cir. 1998).

A.B. by L.K. v. Smith, No. 22-1686, 2023 WL 3533595, at *4 (4th Cir. May 18, 2023). "To avoid undermining the administrative proceeding, the United States Court of Appeals for the Fourth Circuit has construed the term 'additional evidence' narrowly." Soltes v. Bd. of Directors of Woods Charter Sch. Co., No. 1:16CV119, 2017 WL 354270, at *4 (M.D.N.C. Jan. 24, 2017) (quoting Springer, 134 F.3d at 667). Courts have allowed supplementation where a party argues the improper exclusion of evidence by the administrative agency. Soltes, 2017 WL 354270, at *4 (quoting Brandon H. ex rel. Richard H. v. Kennewick Sch. Dist. No. 17, 82 F. Supp. 2d 1174, 1179 (E.D. Wash. 2000)).

In this case, Plaintiffs challenge the NCOAH's ruling in Defendant's favor to exclude certain evidence, and the Court will allow that excluded evidence to be added to the instant record

17

in order to evaluate the merits of Plaintiffs' arguments at the appropriate time. Accordingly, the Court GRANTS Plaintiffs' motion to supplement the administrative record, and in so ruling expressly declines to address any arguments as to the merits of the admissibility of that evidence and the NCOAH's decision to exclude such evidence. Although the evidence is attached to the instant motion, the Court directs Plaintiffs to file the supplemental evidence in a separate filing that is indexed accordingly and accompanied by a motion to seal, if appropriate.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Partial Motion to Dismiss, (Doc. No. 18), is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File, (Doc. No. 33), is GRANTED.

**IT IS SO ORDERED.**

Signed: March 27, 2024

_____
Frank D. Whitney
United States District Judge