| | | |
|---|---|---|
| SONDA FARMER AND<br>STEPHEN FARMER,<br>INDIVIDUALLY AND ON BEHALF OF S.F.,<br>THEIR MINOR CHILD,<br><br>Plaintiffs,<br><br>v.<br><br>UNION COUNTY BOARD OF EDUCATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Judgment on the Administrative Record, (Doc. No. 47), and Motion for Summary Judgment, (Doc. No. 45). This matter has been fully briefed, (Doc. Nos. 46, 48, 52, 53, 58, 59), and is ripe for ruling. For the reasons set forth below, Defendant's Motion for Judgment on the Administrative Record is GRANTED IN PART and DENIED IN PART and Defendant's Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

Plaintiff S.F. and his parents, Plaintiffs Sonda Farmer and Stephen Farmer, bring this action challenging Defendant Union County Board of Education's alleged failure to provide S.F. with a free appropriate public education, ("FAPE"), during the 2021–2022 school year. Plaintiffs further allege Defendant's actions amount to negligence and negligent infliction of emotional distress.[1]

---

[1] The Court dismissed Plaintiffs' other claims in response to Defendant's Motion to Dismiss. (See Doc. No. 39.)

## A. Procedural Background

On March 28, 2022, Plaintiffs Sonda Farmer and Stephen Farmer filed a due process petition under the Individuals with Disabilities in Education Act ("IDEA") with the State Office of Administrative Hearings, ("OAH"), on behalf of their minor child, S.F., alleging denial of a free appropriate public education, ("FAPE"), regarding S.F.'s individual education program, ("IEP"), and placement on homebound services during 2021-2022 school year.[2] (Doc. No. 30-4, pp. 390–428.) Plaintiffs' petition requested placement in private school, reimbursement for private school placement, and payment for private counseling. (Id., p. 426–27.)

An Administrative Law Judge, ("ALJ"), heard the petition during a multi-day hearing. (Doc. No. 30-2, pp. 2–4.) During the hearing, Plaintiffs presented seven witnesses and Defendant presented six. The ALJ admitted over eighty exhibits by stipulation, and admitted eight exhibits Plaintiffs submitted. (Id., pp. 5–11.) The ALJ found in favor of Defendant on all issues in a written decision dated December 5, 2022. (Doc. No. 30-1, p. 906.) In particular, the ALJ concluded: Plaintiffs did not carry their burden to demonstrate Defendant denied S.F. a FAPE at any time during the 2021-2022 school year, including with respect to his evaluations, placement, or services; Plaintiffs did not demonstrate any alleged procedural violations caused S.F. harm; Plaintiffs did not demonstrate Melmark Carolinas, a private school, was an appropriate placement for S.F.; and Plaintiffs did not demonstrate private school placement was required to provide S.F. a FAPE. (Id., 905–06.) Based on these conclusions, the ALJ also concluded Plaintiffs did not meet their burden to prove their requested remedies—awards for private counseling and private compensatory education—were appropriate. (Id., p. 906.)

---

[2] Plaintiffs' petition also raised whether Defendant provided S.F. a FAPE during the 2020-2021 school year. At the hearing before the ALJ, Plaintiffs limited their petition to the 2021-2022 school year based on the statute of limitations. (Doc. No. 30-1, pp. 691–92.) N.C. Gen. Stat. § 115C-109.6(b).

Plaintiffs then filed a Complaint in the instant case seeking injunctive and declaratory relief and damages. (Doc. No. 1.) Plaintiffs amended their complaint on July 13, 2023. (Doc. No. 10.) On March 27, 2024, this Court granted in part and denied in part Defendant's Motion to Dismiss. (Doc. No. 39.) Plaintiffs' remaining claims challenge the ALJ's decision on procedural and substantive grounds under the IDEA and allege negligence and negligent infliction of emotional distress.

## B.    Factual Background

S.F. is a child with a disability—autism spectrum disorder—and had an Individualized Education Plan, ("IEP"), at all times while enrolled in Defendant's schools. (Doc. No. 30-2, p. 330.) S.F. has an average to above-average IQ and excelled academically in Defendant's schools prior to September 2021, but struggled socially. (Id., p. 306; Doc. No. 30-1, pp. 350, 384–86.) At the end of S.F.'s ninth grade year, in May 2021, S.F.'s IEP team met for the annual review of his IEP. (Doc. No. 30-2, pp. 96–107.) The IEP team reduced S.F.'s exceptional children ("EC") services from ninety minutes daily to twenty-five minutes daily and noted discipline as "not a current area of concern." (Doc. No. 30-2, p. 109, 114.) S.F.'s IEP retained the same Behavioral Intervention Plan ("BIP") developed in May 2020, which included a "cool down" area S.F. could use for "self-regulation" when he experienced anger or frustration during the school day. (Doc. No. 30-4, pp. 19–21.) Plaintiffs did not express concerns about the BIP at the May 2021 IEP meeting, but did express concern "about the increase in student enrollment and class sizes" that would come with relaxed COVID-19 restrictions. (Doc. No. 30-2, pp. 96–107, 111.)

When S.F. returned to Marvin Ridge High School for his tenth-grade year in the fall of 2021, a series of escalating disciplinary incidents ultimately lead to this lawsuit. On September 9, 2021, S.F. had a disciplinary incident in his math class that resulted in a one-day suspension. (Doc.

No. 30-1, p. 238.) Plaintiffs did not request an IEP meeting in response to this incident. (Doc. No. 30-1, p. 366.) On September 27, 2021, S.F. had another behavioral incident during his math class. S.F. left class consistent with his BIP and was not suspended. (<u>Id.</u>, p. 239.) On September 28, 2021, S.F. had a serious disciplinary event during his Civics class. He physically assaulted a teacher and used opprobrious language directed towards another student. (Doc. No. 30-1, pp. 29–30; Doc. No. 30-2, p. 118.) At least one other student captured the incident on video, and it was posted on social media. (Doc. No. 30-1, p. 242.) S.F. was immediately removed from in-person attendance at MRHS. This incident resulted in a six-day suspension. (Doc. No. 30-2, p. 16.)

Defendant held a manifestation determination review ("MDR") meeting on October 1, 2021, and determined the incident was a manifestation of S.F.'s disability. (Doc. No. 30-2, pp. 118–120.) On October 5, 2021, the IEP team held a meeting and temporarily placed S.F. on homebound.[3] (<u>Id.</u>, p. 140.) At the meeting, all parties appeared to agree returning to MRHS would not be an appropriate placement for S.F. (<u>Id.</u>) Plaintiffs expressed several concerns and made requests moving forward, including a new functional behavioral assessment, ("FBA"), conducted by an autism specialist. (Doc. No. 30-2, pp. 126–27.) At the meeting, the IEP team determined updating S.F.'s BIP was not appropriate at that time. (Doc. No. 30-2, p. 141.) The team adjusted S.F.'s services to thirty total minutes of EC programming at home once a week and one and a half hours of general education services per week. (<u>Id.</u>, pp. 133, 140.) S.F.'s regular education teacher was unavailable on October 5, 2021. MRHS Assistant Principal David Thomson attended the IEP meeting instead. (<u>Id.</u>, p. 142; Doc. No. 30-1, p. 655–56.)

---

[3] As a result of the September 28, 2021, incident, the other student's parent sought a no-contact Order against S.F. (Doc. No. 30-2, pp. 17–19.) A state judge granted that request on a temporary basis. (<u>Id.</u>, p. 20.) During Defendant's father's testimony, he appeared to believe S.F.'s teacher requested the no-contact order. (Doc. No. 30-1, p 367.) The teacher's name is included in the record and does not match the name of the individual who requested the no-contact order.

The IEP team continued to meet while S.F. was on homebound. (See Doc. No. 30-2, pp. 146–208.) During that time, Plaintiffs expressed concerns with Defendant's provision of general education services to S.F., including a delay in the commencement of math-specific tutoring. S.F. was also "teaching himself" Civics and Economics. (Doc. No. 30-2, pp. 160, 184; Doc. No. 30-1, pp. 325–26.) Jennifer Poulsen, an EC Program Specialist for Defendant, testified she could not identify or recall why these services were delayed. (Doc. No. 30-1 p. 6.54) Plaintiffs expressed their desire that Defendant provide an "out of the box" placement option for S.F. because prior placements had been unsuccessful and rejected Defendant's proposed placements. (Doc. No. 30-2, p. 147, 161; Doc. No. 30-1, pp. 385–87.)

On December 10, 2021, S.F. withdrew from Defendant's schools. (Doc. No. 30-2, p. 239.) The IEP team convened again on December 16, 2021. (Doc. No. 30-2, p. 176.) Thereafter, S.F. enrolled at Trinity Preparatory Christian School in Charlotte, NC, which offered smaller class sizes and no EC services.[4] (Doc. No. 30-2, p. 251.) The IEP team continued to meet through the spring of 2022. (Doc. No. 30-2, pp. 240–78.) A regular education teacher attended the meeting on March 31, 2022, and thereafter. (See id.) However, the team could not come to an agreement concerning S.F.'s IEP and placement. Plaintiffs' state due process petition and this lawsuit followed.

## III. Discussion

The IDEA, 20 U.S.C. §§ 1400 et seq., was enacted to "throw open the doors of public education" and help students with disabilities who had previously been "either completely ignored or improperly serviced by American public schools." T.B., Jr. ex rel. T.B., Sr. v. Prince George's Cnty. Bd. of Educ., 897 F.3d 566, 571 (4th Cir. 2018). The IDEA requires that states, in return for federal funding, ensure that every child with a disability may achieve a FAPE. Id. (quoting 20

---

[4] S.F. was later removed from in-person attendance at Trinity for disciplinary reasons. (Doc. No. 30-4, p. 37.)

U.S.C. § 1412(a)). A FAPE refers to "special education and related services" that are "(1) without charge, (2) meet the standards of the state educational agency, (3) include the appropriate level of education in the state involved and (4) are provided in conformity with an [IEP]." K.I. v. Durham Pub. Schs. Bd. of Educ., 54 F.4th 779, 785 (4th Cir. 2022).

The IDEA anticipates that parents and educators will not always agree, and therefore assigns procedural rights to parents. A parent may request a due process hearing before an impartial state or local educational agency. 20 U.S.C. § 1415(f)(1)(A). In North Carolina, parents exercise their right to a due process hearing by filing a petition with the Office of Administrative Hearings. N.C. Gen. Stat. § 115C-109.6(a). The Office then appoints an ALJ who "shall issue a written decision" with "findings of fact and conclusions of law." Id. § 115C-109.6(f). A parent who does not obtain relief from the ALJ may, under the IDEA, sue in state or federal court, as S.F.'s parents have done here. 20 U.S.C. § 1415(i)(2)(A).

Actions under the IDEA are "independent civil actions in which the district court considers the record of the state administrative hearing, as well as any new evidence offered by a party, and makes findings based on the preponderance of the evidence." Cnty. Sch. Bd. of Henrico Cty., Va. v. Z.P. ex rel. R.P., 399 F.3d 298, 304 (4th Cir. 2005); 20 U.S.C. § 1415(i)(2)(B). The burden of proof is "properly placed upon the party seeking relief"—here, S.F. and his parents. Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 62 (2005); Fairfax Cnty. Sch. Bd. v. Knight, 261 F. App'x 606, 608 (4th Cir. 2008) ("The parents bear the burden of proving that an IEP was substantively deficient.").

## A. Regularity of the ALJ Decision

Plaintiffs argue this Court should not afford the ALJ's decision "due weight" because it was not regularly made. Under the IDEA's deferential standard, where the ALJ's findings are

"regularly made," the district court must consider the findings "prima facie correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it." Doyle v. Arlington Cty. Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991). "When determining whether a hearing officer's findings were 'regularly made,' our cases have typically focused on the process through which the findings were made." J.P. ex rel. Peterson v. Sch. Bd. of Hanover Cnty., 516 F.3d 254, 259 (4th Cir. 2008).

In support of their contention, Plaintiffs assert the ALJ's decision was not regularly made because it went against the weight of non-testimonial evidence, excluded critical evidence and witnesses, and did not follow the IDEA process or state law and policy. (See Doc. No. 53.) Plaintiffs assert they were "unable to present evidence of a multitude of policy violations." (Id., p. 10.) However, Plaintiffs fail to cite to the Administrative Record even once in their briefing arguing the ALJ's decision should not be afforded deference. (Id., pp. 8–13.) The Court will not comb the Administrative Record for documentary evidence of vague alleged procedural irregularities. Nevertheless, Plaintiffs' briefing makes clear they take issue with two decisions in particular: (1) the ALJ's decision to exclude the Report prepared by the North Carolina Department of Public Instruction; and (2) the ALJ's decision to exclude the testimony of Leigh Mobley, who Plaintiffs intended to call as an expert.

The ALJ's decision to exclude the NCDPI Report was regularly made. Both parties provided briefing on the issue. (Doc. No. 30-3, pp. 6–15, 60–67.) The ALJ heard further argument before the hearing. (Doc. No. 30-1, pp. 694–700.) In essence, Plaintiffs argue the ALJ's decision was not "regularly made" because they disagree with the decision—but that is not the standard. This Court cannot conclude the ALJ's decision—made after briefing and argument—is akin to flipping a coin or throwing a dart. See J.P., 516 F.3d at 259.

The ALJ's decision regarding Leigh Mobley's testimony as an expert is less clear. Cf.
Bouabid v. Charlotte-Mecklenburg Schs. Bd. of Educ., 62 F.4th 851, 858 (4th Cir. 2023)
("Bouabid does not refer, indeed, to rulings by the ALJ preventing her from introducing additional
evidence or testimony."). It appears the ALJ treated his exclusion of the NCDPI Report as
dispositive as to Mobley's testimony. (Doc. No. 30-1, p. 701.) The Court must consider whether
this decision is so irregular as to render the ALJ's findings akin to a "coin flip." J.P., 516 F.3d at
259.

Plaintiffs sought to introduce Mobley's testimony as an expert concerning alleged
violations of state policy. (Doc. No. 30-1, p. 699.) But the question before the ALJ and before this
Court is not whether Defendant violated state policy—it is whether Defendant violated the IDEA.[5]
Further, the Fourth Circuit has rarely concluded a hearing officer's factual determinations were
not "regularly made." See., D.B. v. Craven Cnty. Bd. of Ed., 210 F.3d 360, *5 (4th Cir. 2000)
(declining to defer to the ALJ who adopted wholesale petitioner's proposed findings of fact and
conclusions of law, including typographical errors, because that "suggest[ed] a cursory or
conclusory decision"); Springer v. Fairfax Cnty. Sch. Bd., 134 F.3d 659, 663 n* (4th Cir. 1998).
At bottom, the ALJ's findings were based on the testimony of seven total witnesses for Plaintiffs.
They were not "cursory," "conclusory," or poorly reasoned, even without Mobley's testimony.
The exhibits the ALJ reviewed included everything Mobley reviewed in preparing the NCDPI
report. (Doc. No. 30-1, p. 698.) Therefore, this Court will afford the ALJ deference under well-
established Fourth Circuit precedent.

---

[5] As discussed further below, the Fourth Circuit has directed this Court to consider whether Defendant's actions
amount to a substantive denial of educational benefits under North Carolina's heightened standard. See Burke Cnty.
Bd. of Educ. v. Denton, 895 F.2d 973, 983 (4th Cir. 1990).

**B.      Free Appropriate Public Education**

To satisfy the IDEA, the school must offer an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 580 U.S. 386, 399 (2017).

1.      *Procedural Errors*

Plaintiffs contend Defendant committed procedural errors under the IDEA. Specifically, Plaintiffs allege: (1) following the October 1, 2021, manifestation determination review, Defendant did not revise S.F.'s behavioral intervention plan, conduct a new functional behavioral assessment, or update S.F.'s IEP to address his increased frequency of behavioral incidents (2) parents were excluded from "critical discussions;" and (3) Thomson attended the IEP meetings rather than one of S.F.'s regular education teachers. (Doc. No. 10, pp. 16–17.) Defendant does not specifically dispute any of the facts regarding alleged procedural violations, but argues any alleged violation did not result in loss of an educational opportunity for S.F. (Doc. No. 48, p. 19.)

The IDEA and its implementing regulations include several procedural requirements. See 34 C.F.R. § 330.500 et seq. The following are relevant to Plaintiffs' claims. First, if school personnel and the parents determine a disciplinary incident was a manifestation of the child's disability, the IEP Team "must either (i) conduct a functional behavioral assessment, unless the [local educational agency] had conducted a functional behavioral assessment before the behavior that resulted in the change of placement occurred" and implement a BIP; or "(ii) [i]f a behavioral intervention plan already has been developed, review the behavioral intervention plan, and modify it, as necessary, to address the behavior." 34 C.F.R. § 300.530(f)(1). Second, "Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process." Bd. of Ed. of Hendrick

9

Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 205 (1982). "The parents of a child with a disability must be afforded an opportunity to participate in meetings with respect to identification, evaluation, and educational placement of the child and the provisions of FAPE to the child." 34 C.F.R. § 300.501(b)(1). Third, a student's IEP team must include "not less than 1 regular education teacher of [the] child (if the child is, or may be, participating in the regular education environment)." 20 U.S.C. § 1414(d)(1)(B).

Defendant did not commit procedural error in responding to S.F.'s September 27, 2021, disciplinary incident. The regulation directs local educational agencies to either conduct an FBA and implement a BIP *or* review the existing BIP and modify its terms if necessary. 34 C.F.R. § 300.530(f)(1). Plaintiffs briefing selectively cites only one portion of the regulation. (Doc. No. 53, p. 15.) The IEP team reviewed S.F.'s BIP at the MDR and determined revisions were not appropriate at that time. (Doc. No. 30-2, p. 141.) Plaintiffs disagree with that conclusion, but Defendant took the required steps under the IDEA.

Defendant also did not commit procedural error by excluding Plaintiffs from "critical discussions." Plaintiffs point to several text messages between various administrators. (Doc. No. 30-2, pp. 41–74.) However, under the IDEA "[a] meeting does not include informal or unscheduled conversations involving public agency personnel . . .." Id. § 300.501(b)(3). "A meeting also does not include preparatory activities that public agency personnel engage in to develop a proposal or response to a parent proposal that will be discussed at a later meeting." Id. At most, the text messages Plaintiffs refer to demonstrate administrators were preparing for the parties' various IEP meetings, managing public concern related to S.F.'s September 27, 2021, behavioral incident, and conducting the informal, preparatory meetings the regulations explicitly contemplate. This does not amount to procedural error.

10

However, the Court cannot conclude Defendant committed no procedural error when Thomson attended most of the IEP meetings in lieu of a regular education teacher. It is undisputed Thomson—who was "familiar" with S.F. but was never a teacher "of S.F."—attended most of the IEP meetings. Defendant cites no statute or regulation permitting his substitution for one of S.F.'s regular education teachers. And it is unclear on this record whether this error "actually interfere[ed] with the provision of a free appropriate education" to S.F. Gadsby v. Grasmick, 109 F.3d 940, 956 (4th Cir. 1997). S.F.'s father's testimony and the documentary evidence demonstrate S.F.'s regular education was a top concern with his homebound placement. (Doc. No. 30-2, p. 160, 184; Doc. No. 30-1, pp. 325–26.) Several IEP meetings focused on the provision of general education services to S.F. while on homebound. On this record, disputes of fact preclude judgment on the administrative record in Defendant's favor concerning whether the absence of a regular education teacher interfered with the provision of a FAPE to S.F.

2.    *Substantive Errors*

Next, the Court must consider whether Defendant provided S.F. with a FAPE. Plaintiffs allege Defendant: did not develop substantively appropriate IEPs, including with respect to S.F.'s BIP and re-entry plan; failed to place S.F. in the least restrictive environment between October 1, 2021, and December 16, 2021; failed to implement S.F.'s IEPs, including following an appropriate BIP, conducting an FBA, and providing him sufficient general education while homebound; predetermined S.F.'s placement in homebound segregated from his peers; designated S.F. to homebound placement after the MDR; and failed to consider any placement other than homebound.

Plaintiffs bear the burden of "proving that the IEP was substantively deficient." A.K. ex rel. J.K. v. Alexandria City Sch. Bd., 484 F.3d 672, 679 (4th Cir. 2007). For many of the same

11

reasons set forth above, the Court concludes Plaintiffs' claim that Defendant did not provide S.F. a FAPE by failing to implement his IEPs fails. Until late September 2021, S.F. had an IEP in place that appeared to be working. The Court will not second-guess the judgment of educators and administrators reacting in real-time to the resumption of normal class-sizes after COVID. See Rowley, 458 U.S. at 206 (concluding district courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review"). S.F.'s May 2021 IEP included specific educational, social, and emotional goals tailored to S.F.'s particular circumstances—that of a student diagnosed with autism with a high IQ and strong academic capabilities. Further, even after S.F.'s more serious disciplinary incident in late September 2021, the IEP team met and considered whether revisions to his existing BIP were appropriate at that time. (Doc. No. 30-2, p. 141.) Plaintiffs disagree with the ultimate decision. But disagreement is not sufficient to amount to a denial of FAPE, and on this issue the Court agrees with the ALJ.

However, disputes of fact remain as to whether Defendant failed to provide S.F. a FAPE by placing him on homebound services from October 1, 2021, to December 16, 2021. It is unclear whether (1) that was the least restrictive environment for S.F.; and (2) whether Defendant provided him adequate services during that time, particularly general education services. The disposition notes from several IEP meetings indicate delivery of general education services to S.F. while on homebound was delayed. S.F.'s father testified S.F. was teaching himself certain courses, and his IEP provided for only one and a half hours of general education services per week at home. (Doc. No. 30-2, p. 140.) To be sure, the IDEA does not require Defendant to provide "a potential-maximizing education." A.B. ex rel. D.B. v. Lawson, 354 F.3d 315, 319 (4th Cir. 2004) (quoting

<u>Rowley</u>, 458 U.S. at 197 n.21). But the record raises disputes of fact that cannot be resolved on this record and may require live testimony to allow the trier of fact to evaluate witness credibility.[6]

## C. Tort Claims

Plaintiffs allege Defendant behaved negligently when it changed S.F.'s placement to homebound. (Doc. No. 10, p. 36.) Plaintiffs further allege Defendant inflicted emotional distress on S.F. when it "removed S.F. from the educational environment following a disability related behavioral altercation" without permitting him to return or offering another in-person placement with access to his peers and live instruction. (<u>Id.</u>, p. 37.)

Tort claims sounding in educational malpractice are not cognizable under North Carolina law. Plaintiffs argue this does not apply to their claims because, although "courts have been reluctant to allow tort-like damages under IDEA, this does not preclude claims for negligence where the harm results form a failure to fulfill" specific statutory duties. (Doc. No. 53, p. 9.) Plaintiffs cite no authority for this proposition. They further argue they are not "seeking damages for the general quality of education but are instead addressing the Defendant's failure to adhere to specific statutory requirements." (Doc. No. 52, p. 9.) Based on the controlling law in this Circuit, Plaintiffs' allegations, and the evidence in the record, this is a distinction without a difference.

In <u>Sellers v. School Board of the City of Manassas</u>, 141 F.3d 524, 526 (4th Cir. 1998), the Fourth Circuit held parents' claims for damages for "two alleged violations of the [IDEA]" were barred. Rather than seek damages under the IDEA—a remedy squarely barred by Fourth Circuit precedent—Plaintiffs repackage their claims as negligence. Plaintiffs acknowledge their

---

[6] Neither party briefed whether Defendant failed to provide FAPE under North Carolina law. The Court notes North Carolina requires a level of substantive special education benefit greater than that required under federal law. <u>See</u> <u>B.W. ex. rel. Webster v. Durham Pub. Schs.</u>, No. 1:09CV00970, 2021 WL 2344396, at *9 (M.D.N.C. June 20, 2012) (quoting Burke Cnty. Bd. of Educ. v. Denton, 895 F.2d 973, 983 (4th Cir. 1990)). To the extent this issue is properly presented, the Court concludes disputes of fact preclude judgment on the administrative record, as well.

negligence claims are based on Defendant's alleged "failure to adhere to specific statutory requirements." (Doc. No. 53, p. 9.) The appropriate remedies for that failure are set forth in the IDEA and addressed above. Without controlling authority to the contrary—which Plaintiffs do not identify—the Court declines to circumvent the statutory scheme Congress set forth in the IDEA by allowing tort damages here. See Sellers, 141 F.3d at 527 ("Tort-like damages are simply inconsistent with IDEA's statutory scheme.").

## IV. CONCLUSION

In conclusion, Defendant is entitled to judgment on the administrative record as to Count Two of the Amended Complaint because the ALJ's factual conclusions should be afforded due weight and on Count Three of the Amended Complaint because the ALJ did not abuse his discretion by excluding the NCDPI Report or Mobley's testimony. Defendant is also entitled to summary judgment on Plaintiffs' tort claims—Counts Ten and Eleven—because those claims fail as a matter of law.

However, in the Court's view, disputes of fact remain as to whether (1) the procedural error that occurred when Thomson replaced S.F.'s regular education teacher in his IEP meetings caused a denial of FAPE; (2) whether S.F.'s prolonged placement on homebound services resulted in a denial of FAPE, including whether homebound was the least restrictive environment and whether Defendant provided S.F. appropriate general education services while homebound; and (3) whether these alleged violations entitle Plaintiffs to the relief they seek under the IDEA. Therefore, Counts One and Four of Plaintiffs' Complaint may proceed to trial.

### MEDIATION AND TRIAL

The Case Management Order, ("CMO"), in this case was based on the parties' anticipation that trial would be unnecessary "following the Court's ruling on the Cross Motions for Judgment

14

on the Administrative Record." (Doc. No. 17, p. 6.) The Court also did not direct the parties to complete Alternative Dispute Resolution. (Id., p. 4.) Plaintiff did not file a dispositive Motion, and as set forth above the Court cannot resolve the case on this record before it. The parties are ORDERED to complete Alternative Dispute Resolution by their preferred ADR Method and to file a report of the results no later than February 27, 2025.

Plaintiffs' Complaint included a jury demand. (Doc. No. 10, p. 40.) In light of this case proceeding to trial only on Plaintiffs' IDEA claims, the Court ORDERS the parties to file a joint report concerning whether any issues triable by a jury remain, or whether the case should proceed to a bench trial. The parties' report should be filed no later than January 21, 2025. Thereafter, the Court will issue an Order modifying the CMO in this case and setting pretrial deadlines.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Administrative Record, (Doc. No. 47), is GRANTED IN PART and DENIED IN PART without prejudice to Defendant's ability to reassert any applicable arguments at trial.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (Doc. No. 45), is GRANTED, and Plaintiffs' negligence claims are DISMISSED.

**IT IS FURTHER ORDERED** that the parties are DIRECTED to file a joint statement consistent with this Order no later than January 21, 2025.

**IT IS SO ORDERED.**

Signed: January 14, 2025

Frank D. Whitney
Senior United States District Judge

15